UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

CASE NO.   15-CR-14021-RLR

v.

DAVID R. SUTTON,

    Defendant.
_____/

**SENTENCING MEMORANDUM**

    COMES NOW the Defendant, DAVID R. SUTTON, by and through undersigned counsel, and files this Sentencing Memorandum and in support states as follows:

**A SENTENCE WHICH REFLECTS AN AGREED UPON VARIANCE BELOW THE APPLICABLE GUIDELINE RANGE IS REASONABLE**

    It has been nine years since the Supreme Court released the district courts from the mandatory Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005).  In the wake of *Booker*, it is essential that district courts make an "individualized assessment based on the facts presented."  *Gall v. United States*, 552 U.S. 38, 50 (2007).  The Supreme Court emphasized that a sentencing Court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case... This means that [t]he sentencing judge has access to, and greater familiarity with the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court."  *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 357-58 (2007).)

    Then Judge Rosemary Barkett of the United States Court of Appeals for the Eleventh Circuit recognized the importance of not deferring to the Guideline in imposing a

1

sentence. In *United States v. Docamp, Jr.*, 573 F.3d 1091, 1105 (11th Cir. 2009) (concurring in part and dissenting in part), Judge Barkett found that the district court should start the imposition of a sentence with a calculation of the Guidelines and then permit the district courts to "tailor the sentence in light of other statutory concerns," not presuming that the Guidelines range is necessarily reasonable. *Docamp, Jr.* at 1105.

As the Court is well aware, the factors provided in 18 U.S.C. § 3553(a) are intended to guide the sentencing judge in determining a reasonable sentence. Those factors include the history and characteristics of the Defendant, the nature, circumstances and seriousness of the offense and the need for deterrence and rehabilitation.

It is SUTTON's position, agreed upon by the government, that a balancing of these factors warrants a sentence variance well below the applicable guideline range. In the PSI report the applicable guideline range is anticipated to be calculated as 24-30 months imprisonment. The parties have agreed that it would be appropriate to grant a variance to the low end of Zone B of the sentencing table in the Guidelines Manual, calling for four (4) months home detention as a special condition of a term of probation. See, U.S.S.G. Section 5C1.1(c)(3).

I.  <u>The Seriousness of the Offense (18 U.S.C. §3553(a)(2))</u>

SUTTON would begin by discussing the seriousness of the offense. SUTTON does not discount the seriousness of his conduct or that of the relevant the relevant federal firearms statutes, Title 26, U.S. Code Section 5861. However, the specific facts of this case must be put in context.

A. As is stated in the Stipulation as to Factual Basis for Guilty Plea, SUTTON is a collector and owner of firearms. Importantly, he specifically enjoyed collecting older firearms of the Vietnam War era. This fits in with one of his professions, that being a flight instructor for the

United States Navy and Air Force, training military pilots to fly Soviet era MIG fighter jets that SUTTON owns.

In this case SUTTON obtained, received and possessed, through international and interstate commerce, three (3) lower receivers for Vietnam War era M-16 automatic rifles, all admittedly in violation of Title 26, U.S. Code Section 5861(d)(j) and (k). The lower receivers were not themselves firearms, but were an integral part of firearms if connected to other firearm pieces.

SUTTON had no evil purposes in obtaining these lower receivers. He was never going to use any firearms for criminal purposes. He was solely collecting them.

  B. The value of the lower receivers SUTTON obtained was very small. After SUTTON's arrest the government filed documents for forfeiture of the lower receivers. In the forfeiture documents, the government stated the asset value of each lower receiver to be $10.00. Attached is a copy of the government's Notice of Seizure and Administrative Forfeiture Proceeding. SUTTON did not contest the forfeiture case.

II. <u>The Need To Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B)) And To Protect the Public From Other Crimes Of The Defendant (18 U.S.C. §3553(A)(2)(c)</u>

Any sentence, even a probationary sentence, is substantial to a person like SUTTON. He has never been convicted of anything in his life, let alone convicted of a felony. He has never been previously subject to any supervision. While on probation, SUTTON will be subject to monitoring by the U.S. Probation Department. Certainly, the public will be protected from SUTTON through a sentence of probation.

III. <u>The History and Characteristics of the Defendant</u>

A judicial determination of "just" punishment must of necessity involve careful inquiry into the life history and character of the person who is to be sentenced. *See*, 18 U.S.C. § 3553(a)(1) (Court "shall consider... the history and characteristics of the defendant").

By any standard, SUTTON has lived a truly exemplary life outside of the commission of the present offense. Viewed through any lens, SUTTON's "history and characteristics" point convincingly to the fact that any sentence of imprisonment would constitute punishment far "greater than necessary" to accomplish the goals of sentencing and would therefore be excessive under § 3553(a).

      A.    <u>No Felonious Prior Criminal History</u>

First, SUTTON has never been in serious trouble with the law, either as a juvenile or adult. He is in Criminal History Category I. His criminal history reflects no convictions. A defendant's criminal history is informative to his/her general character and also serves as a predictive indicator of the likelihood of recidivism. "[A] district court may weigh a defendant's lack of criminal history, even when the defendant has been placed in a criminal history category of I, in its § 3553(a) analysis." *United States v. Huckins*, 529 F.3d 1312, 1318 (10th Cir. 2008). *See*, also, *United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have now held that district courts have broad discretion to consider individual characteristics like... criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation."), *United States v. Montgomery*, 165 Fed. Appx. 840, 843, 2006 WL284205, 2 (11th Cir. 2006) (unpublished decision) (Eleventh Circuit, in affirming significant downward variance as reasonable, noted that "this crime was Montgomery's first and only offense.").

      B.      SUTTON'S Employment With The Military Reflects His Good Character And The Need For Him To Continue Serving The United States

SUTTON is employed in two ways. First and foremost, he is a flight instructor for the United States Navy and Air Force. Not just a flight instructor, SUTTON provides a unique service in that he trains test pilots to fly Soviet era MIG jets that SUTTON owns. To describe SUTTON's service as "unique" is an understatement. Second, SUTTON is a dive instructor, both for the military and other government entities as well as the public.

SUTTON's services are invaluable. Filed along with this memorandum are several character reference letters from high ranking military officers, including a United States Air Force Brigadier General, a United States Navy Commander and a former Special Forces Officer. This is truly an incredible array of persons taking the time to express their support of SUTTON.

USAF Brigadier General Robert Nolan recently retired from being Commander of the Air Force Flight Test Center at Edwards Air Force Base in California. He writes:

"Dave offers a unique and vital service to this nation and I ask that any penalty imposed allow his continued and uninterrupted service. David is an expert in foreign aviation technology. He has provided valuable consulting services to numerous US weapons and aircraft development programs and he has spent the last 16 years serving the Department of Defense, both USAF and USN, as an instructor pilot in Russian MIG aircraft. I have flown with him myself. His expertise is unmatched. His instructional skill is second to none and I consider him to be an irreplaceable asset.

In my capacity as the Air Force Flight Test Center Commander, I trusted Dave to fly with my most precious resource, the student test pilots at the United States Air Force Test Pilot School. These talented men and women represent the future of our great nation and the knowledge passed to them by Dave Sutton is vital to their development as test pilots and to their development as future leaders within the United States Air Force."

Commander Peter M. Waters of the United States Navy (Retired) met SUTTON while Waters was a Senior Airborne Systems Instructor at the United States Naval Test Pilot School. He writes:

"I hold Dave in the highest regard, both as a friend and as colleague, and know him to be an utterly trustworthy, honest, and straightforward individual who is a model of personal and professional integrity.  In his capacity as director and primary pilot at Red Star Aviation, a non-profit organization, Dave flies several vintage decommissioned foreign military jets that provide valuable, unique and irreplaceable training to the student Test Pilots at Navy Test Pilot School. Dave's dedication to these young Navy pilots, who will soon be entering the hazardous world of military jet flight test, is well-know throughout the entire flight test community and is a measure to his dedication to serving our country.

Although technically a visiting instructor, Dave is a staple of the Navy Test Pilot School program who is invited back to the School time and time again to mentor the student pilots every six months. This is no accident, as he consistently demonstrates sound judgement in demanding conditions, as well as a determination to do the right thing even when it is difficult and costly.  He is a model aviator, and although he is not a military officer, he uphold the standards of Naval service as though he were.

As a fellow aviator, I would trust Dave Sutton with my life. I am also not alone in this;  a long succession of Commanding Officers at Navy Test Pilot School (as well as Air Force Test Pilot School) demonstrate that same trust by sending their young student pilots -- their professional children -- into the air in an antique jet with Dave year after year."

Leon P. Scamahorn, CEO of InnerSpace Systems Corporation and a former Special Forces soldier writes:

"I am writing on behalf of Dave Sutton.  I have had a professional relationship with Dave since 2003. Dave is currently a professional instructor for my company teaching on my company's specialized rebreathing apparatuses to customers around the world and lending customers specialized advise that only a rare few can help with.

. . . .

Dave offers a unique and vital service to his country and I ask that any penalty imposed allow his continued and uninterrupted service to his country.  Dave is considered an expert in foreign aviation technology and provides beyond doubt the best in specialized services to weapons systems and aircraft development programs, and he has spent the last 16 years serving the Department of Defense, both USAF and USN, as an instructor pilot in Russian MIG aircraft.

In my capacity as the CEO of a company that builds life support equipment for the U.S. Navy and civilian divers, my company trusts Dave to train, equip and advise my customers and to provide continuous education and professional services for those customers so they may dive and stay safe on specialized product.  Dave is a specialized asset to this country and cannot be easily replaced."

Captain Brandt A. Moslener of the U.S. Navy writes:

"As the Commanding Officer [of the U.S. Naval Test Pilot School], I had total accountability for the safety of approximately 100 aircrew. I was responsible for ensuring our wide variety of aircraft were properly maintained, and that students and instructors were properly trained to execute the syllabus. While the majority of training was provided by permanent staff members in aircraft assignment to the school, we routinely augmented with individuals or organizations that could provide training in a unique aircraft in order to meet a specific learning objective. The selection of these individuals or organizations was done with great scrutiny; with both the safety of the students and staff in mind, as well as the value for the tax payer's dollars. Dave's long standing and consistent relationship with the school is a testament to the trust and confidence that he has built with every Commanding officers for over 15 years."

Capt. Richard L. Brasel, US Navy (Ret.) And former commanding officer of the U.S. Navy test pilot school writes:

"His performance ratings as a U.S. Government contractor were exceptional in every category."

. . . .

"He.. made himself indispensable to my operation."

Commander David Culbertson writes:

"I understand that David pleaded guilty to a firearms offense... I am convinced that this incident was a lapse of judgment and oversight on David's part. He has the utmost respect for the law and this is certainly not a pattern of criminal behavior. Dave has expressed remorse for this one-off event and I know that his number one concern is making amends and returning to solid citizenship."

Sergeant Adam J. Shura, USAF, writes:

"[T]he Government recognizes that he [David Sutton] is an essential part of our national defense infrastructure, and that any interruption of his services will have serious consequences. I respectfully ask that any punishment rendered be non-custodial punishment that allows him to perform his service to our nation in an uninterrupted manner."

All of the incredible letters written on SUTTON's behalf are being filed at the time of the filing of this Memorandum in a Notice of Filing for the Court's understanding.

### C. Cooperation With the Government

Since he was first contacted by government agents, SUTTON has been cooperating with the government to solve this case as well as others. Details will be provided at sentencing. Suffice it

7

to say that SUTTON has been honest and open in all his discussions.  SUTTON's full cooperation is also a factor for consideration for a variance downward.

    IV.  Conclusion

A far below-the-guideline sentence is clearly warranted in this case for the reasons correlated with the statutory sentencing factors, the most prominent of which is related to assessing the nature and characteristics of the Defendant, the nature, circumstances and seriousness of the offense, deterrence, recidivism and incapacitation.

The mitigating theme predominant in this motion for variance is SUTTON's improbable recidivism based upon the nature and circumstances of the offense and his own personal employment history with the U.S. Military. SUTTON  has recognized the wrongfulness of his conduct and has vowed to redeem himself.  That is why both the government and SUTTON have agreed to recommend a sentence far below the applicable guideline range.  That is a sentence at the lower end of Guideline Zone B, which calls for four (4) months home detention as a condition of probation.

High ranking military officers have asked on SUTTON's behalf that SUTTON's service to the military not be interrupted.  Therefore, SUTTON requests that the period of home confinement imposed by the Court be intermittent to allow him to continue to travel to military bases to fulfill contracts and obligations.

SUTTON's contracts with the federal government require him to be training test pilots on military bases on the following dates:

    September 25 - October 16, 2015
    October 30 - November 25, 2015
    January 2 - January 24, 2016

>April 2 - April 24, 2016
>May 1 - May 22, 2016
>July 2 - July 24, 2016

Solid blocks of time in which SUTTON will be available to serve a sentence of home detention are as follows:

>December, 2015
>February - March, 2016
>June, 2016

Finally, SUTTON requests that this Court allow travel for work purposes as a condition of probation, the same as allowed while on pre-trial detention.  Pre-trial travel for work purposes included travel for work on military bases as well as travel to and from the state of Michigan for work in SUTTON's dive business.  All of these travel conditions were satisfied without any problems.

WHEREFORE, based on the arguments set forth above, DAVID R. SUTTON requests a variance to a probation and home detention sentence as recommended by the parties.  In addition, SUTTON requests that he be allowed to intermittently serve the home detention portion of the sentence when he is not working on military bases and be allowed to travel for work purposes.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2015 I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

        Respectfully submitted,
        /S/    JAMES L. EISENBERG
        JAMES L. EISENBERG (Florida Bar No. 216615)
        E-mail Address:  **bigjimlaw@aol.com**
        EISENBERG & FOUTS, P.A.
        250 Australian Avenue South, Suite 704
        West Palm Beach, FL 33401
        561/659-2009
        Facsimile: 561/659-2380
        Counsel for David R. Sutton